UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

BRIN MCCAGG, individually, and on       :
Behalf of CLEARJETS, INC.,
                                        :
          Plaintiff,                         05 CV 10607 (PAC)
                                        :
                                             ORDER
MARQUIS JET PARTNERS, INC.,             :
NETJETS, INC., a division of
BERKSHIRE-HATHAWAY, INC., and           :
JOHN DOES 1-10,
          Defendants.                   :

------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

On March, 29, 2007, the Court granted Defendants' Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). McCagg now moves for reconsideration and for leave to file a proposed second amended complaint under Federal Rules 59(e) and 60(b) and Local Civil Rule 6.3. He asserts the Court committed "legal error … in not specifically granting Plaintiff, upon dismissal of the Amended Complaint, leave to amend to state a relevant market consistent with the Court's Order and Decision …." (Pl.'s Reply to Mot. to Am. 1.) For the reasons discussed below, the motion is denied.[1]

There is no basis in the Federal Rules or the case law for Plaintiff's right to endless amendments of the complaint until his allegations stumble upon a viable claim. That would not be in the interests of justice, especially where he has been given ample prior opportunity to allege a claim. See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 72 (2d Cir. 1996) (citing Armstrong v. McAlpin, 699 F.2d 79, 93-94 (2d Cir. 1983)

---

[1] Familiarity with the facts is assumed; the Court will repeat facts only where necessary.

1

("Because the complaint whose allegations were being considered by the district court was plaintiffs' second amended complaint, the district court did not abuse its discretion in refusing to give plaintiffs a fourth attempt to plead.")).  Certainly, leave to amend cannot be granted where the amendment would be futile, as is the case here.  See Foman v. Davis, 371 U.S. 178, 182 (1962).

### *Court's March 29, 2007 Order*

In its Order, the Court found McCagg's proposed market to be implausible:

> McCagg defines the relevant product market as the 25-Hour Jet Card market, the geographic market being the continental United States and 200 miles beyond its borders.  McCagg has not, however, defined the market with reference to the rules of "interchangeability" or "cross-elasticity."  There is no plausible reason (the Amended Complaint offers no reason whatsoever) why other fractional jet cards are not included in this market.  It makes no economic sense to conclude that a consumer of the 25-Hour Jet Card who is foreclosed from that product would not or could not look to other jet cards, such as a 50-Hour card or a 10-Hour Card, to meet his private aviation travel needs.  As to "cross-elasticity," it is also irrational to conclude that if prices for the 25-Hour Card dropped significantly, it would have no affect on 10 or 50-Hour Cards.

(Mar. 29, 2007 Order 10.)  McCagg now seeks to broaden the product market to include "all Hourly Fractional Jet Cards that allow customers to access the unique benefits of the exclusive fractional jet fleets on an hourly basis." (Proposed Second Am. Compl. ¶ 33.)[2] But the "All Hourly Fractional Jet Card" market is just as implausible as the 25-Hour Jet Card market.  In referring to all hourly jet cards in its Order, the Court was not suggesting that these services constitute a market, or that such a market was plausible.  Instead, the Court cited the alternative services as an example of the extreme narrowness of

---

[2] Plaintiff's Proposed Second Amended Complaint is attached as Exhibit 1 to Mr. Langer's Affidavit in support of the motion.

2

McCagg's proposed 25-Hour Jet Card market. The "All Hourly Fractional Jet Card" market suffers the same deficiencies as the "25-Hour Jet Card" market.

*Relevant Market*

The relevant market for purposes of antitrust litigation is the "area of effective competition" within which the defendant operates. Tampa Elec. Co. v. Nashville Coal Co., 365 U.S. 320, 327-28 (1961). As the Supreme Court explained in United States v. E.I. du Pont de Nemours & Co.: "The … [relevant] market is composed of products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered." 351 U.S. 377, 404 (1956). Thus, products or services need not be identical to be part of the same market. See id. at 394 ("[W]here there are market alternatives that buyers may readily use for their purposes, illegal monopoly does not exist merely because the product said to be monopolized differs from others."). "In economists' terms, two products or services are reasonably interchangeable where there is sufficient cross-elasticity of demand. Cross-elasticity of demand exists if consumers would respond to a slight increase in the price of one product by switching to another product." AD/SAT, Div. of Skylight, Inc. v. Assoc. Press, 181 F.3d 216, 227 (2d Cir. 1999). A plaintiff "must allege how the net economic effect of the alleged violation is to restrain trade in the relevant market, and that no reasonable alternate source is available to consumers in that market." Granite Partners, L.P. v. Bear, Stearns & Co. Inc., 58 F. Supp. 2d 228, 237 (S.D.N.Y. 1999) (internal quotations and citations omitted).

The "All Hourly Fractional Jet Card" market is simply not a plausible market. Again, from McCagg's own pleadings, it is clear that the market includes, at

3

minimum, other aviation charter services, such as "Block Charter Cards" that "broker time on chartered jets that are managed by a multitude of independent charter management companies." (Proposed Second Am. Compl. 36(iii).) McCagg's efforts to distinguish Block Cards from Hourly Cards only highlight how little the two services differ and why they must be considered essentially similar: (1) "[Chartered jets] are much older," (2) "[t]he maintenance of the [chartered] jet and the pilot training is not uniform and is literally done by thousands of small charter companies across the country," (3) "block charter providers jet cards offer a 'class' of jet … which … could be one of fifteen (15) different types of jets …. In contrast [the] Marquis Card is specifically for a Beechjet 400A and it is guaranteed," (4) "The Hourly Fractional Jet Card has much higher insurance coverage than … charter[s]," (5) "The Hourly Fractional Jet Card is 24x7x365 availability guaranteed versus variability with all these other charter … programs," and (6) "The Hourly Fractional Jet Card includes all costs for just the hours flown versus many additional fees associated with charter." (Id.) (emphasis in original).

These may be distinctions, but they are not substantial differences. Further, they do not demonstrate a lack of interchangeability. It is not plausible that a customer who was foreclosed from the "Hourly Fractional Jet Card" would not look to a "Block Charter Card" simply because the Charter Cards are for older airplanes, or of various types of jets; or because Chartered jet pilots receive "non-uniform" training done by "independent charter management companies;" or because insurance coverage is lower for chartered jets. McCagg's bald conclusory statements make no economic sense. See Deep South Pepsi-Cola Bottling Co. v. Pepsico, Inc., No. 88-Civ-6243, 1989 WL

4

48400, *7 (S.D.N.Y. May 2, 1989 ("The federal Courts, in the context of Rule 12 motions, have not hesitated to reject market allegations that make no economic sense under any set of facts."). A mere laundry list of slight distinctions in the way the same product or service is dispensed does not amount to a lack of interchangeability.

McCagg also does not adequately allege the absence of cross-elasticity of the proposed market. McCagg alleges that there is no price elasticity: "On a per hour basis the Marquis Hourly Fractional Jet is approximately 20% more than fractional, 200% more than a charter jet and 30% more than a card that bundles and sells hours on a charter fleet …. Nothing compares in terms of price and Marquis has held its exorbitant prices for 5 years now." (Proposed Second Am. Compl. 34(vi.).) Differences in price levels alone, however, do not equate to the absence of cross-elasticity. See Brown Shoe v. United States, 370 U.S. 294, 326 (1962). Consequently, McCagg's proposed market would be dismissed as not plausible. See Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007) (holding that a plaintiff must "state a claim for relief that is plausible on its face").

*Monopolization*

The Court also notes that it is highly unlikely that McCagg would be able to sufficiently plead market power, even if he could allege a proper market. A plaintiff must establish that the defendant has sufficient market power in that market to create a dangerous probability of obtaining monopoly power. See PepsiCo., Inc. v. Coca-Cola Co., 315 F.3d 101, 106 (2d Cir. 2002). The Supreme Court has defined monopoly power as "the power to control prices or exclude competition." E.I. du Pont de Nemours & Co., 351 U.S. at 391; see also Fishman v. Estate of Wirtz, 807 F.2d 520, 568 (Easterbrook, J.,

dissenting in part) ("Market power means the ability to injure consumers by curtailing output and raising price; no possible injury, no market power, no market power, no violation; injury to the consumers is therefore an essential ingredient of liability."). Even market shares of approximately 50% are insufficient to demonstrate market power where other factors such as low barriers to entry and strong competition exist. See Natsource LLC. v. GFI Group, Inc., 332 F. Supp. 2d 626, 635 (S.D.N.Y. 2004) (citing U.S. v. Waste Mgmt., Inc., 743 F.2d 976, 984 (2d Cir. 1984)). Given that McCagg admits that there are over "three thousand charter companies in the USA" in addition to the "Block Charter Cards" companies, it is highly unlikely that he would be able to demonstrate market power in a properly pled market that included these charter services. (See Proposed Second Am. Compl. ¶¶ 34 & 38.)

        Moreover, even if McCagg could show market power, to succeed on a monopolization claim he must be able to demonstrate that Marquis' agreement with Clingman has created a dangerous probability that Marquis would be able to raise prices above competitive levels, or exclude competition. "[A] showing of market power, while necessary to show adverse effect indirectly, is not sufficient. There must be other grounds to believe that the defendant's behavior will harm competition market-wide …." CDC Techs., Inc. v. IDEXX Labs., Inc., 186 F.3d 74, 81 (2d Cir. 1999) (quoting K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co., 61 F.3d 123, 129 (2d Cir. 1995)). "Proof of actual detrimental effects, such as reduction of output,' can obviate the need for an inquiry into market power, which is but a 'surrogate for detrimental effects.'" F.T.C. v. Ind. Fed'n of Dentists, 476 U.S. 447, 460-61 (1986) (citation omitted).

McCagg makes no allegations of reduction in output or change in price. Even if it were true that Clearjets was not able to enter the aviation charter market because of this agreement, he still must allege that this foreclosure caused harm to competition as a whole. Mere conclusory allegations of competitive harm are not sufficient. See Twombly, 127 S.Ct. at 1959 (stating that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do"). Importantly, McCagg does not allege that prices (in any market) have increased because of the Clingman agreement.

## CONCLUSION

As the Supreme Court recently articulated: "It is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive. That potential expense is obvious here ...." Twombly, 127 S.Ct. at 1967-68. Previously, the Court found that the pleadings were inadequate. The Proposed Second Amended Complaint has the same inadequacies that render amendment futile. The motion to reconsider the March 29, 2007 Order and grant Plaintiff leave to replead is DENIED.

Dated: New York, New York
       July 27, 2007

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge